[Civ. No. 3659. First Appellate District, Division Two.—November 24, 1922.]

ANDREW H. ANDERSON, Respondent, v. LENNA MAE ANDERSON, Appellant.

[1] DIVORCE—POLICY OF LAW—EVIDENCE.—The policy of the law is to conserve the stability of the marriage relation and to grant no divorce except upon clear proof, adequately corroborated, of facts specified by the code as grounds for divorce; and in this action, in which the husband was granted an interlocutory decree of divorce upon the ground of extreme cruelty of the wife, there was no violation of those principles.

[2] ID.—EXTREME CRUELTY—LOSS OF BUSINESS—EVIDENCE.—Plaintiff, and his witnesses, having testified to a course of conduct by defendant that would cause mental and physical suffering to the victim regardless of the acuteness of his sensibilities, and he having testified that during the time he was subjected to these annoyances he lost thirty pounds in weight and was in the worst physical and financial condition he had ever been in in his life, it was not necessary for him to show that he had lost business by reason of the acts of defendant.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Edmund P. Mogan, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. J. Dunne for Appellant.

James M. Thomas for Respondent.

LANGDON, P. J.—This appeal is taken by the defendant from a judgment against her by which plaintiff was granted an interlocutory decree of divorce.

[1]   Appellant devotes much space in her brief to the cases expressing the general attitude of courts with reference to divorce actions. There is no dispute about what this attitude is and it is beyond controversy that the policy of the law, as expressed by appellant, is to conserve the stability of the marriage relation and to grant no divorce except upon clear proof, adequately corroborated, of facts specified by the code as grounds for divorce. However, we find no violation of these principles in the present record. The complaint charged the defendant with having an uncontrollable temper, with constant quarreling, almost continually from the date of the marriage (Dec. 6, 1916), to June 21, 1918. He also charged that she had falsely accused him of improper relations with a "German woman"; that she had stated to divers persons that she was going to "put plaintiff out of business"; that defendant had interfered with plaintiff's business by calling at his office and insisting upon reading all his business letters; that she had accused him of being "so crooked in his business dealings that he never got through with a transaction without having a lawsuit over it"; that on June 21, 1918, in the town of Novato, California, the defendant met plaintiff outside of the freight-sheds of the Northwestern Pacific Railroad; that plaintiff had called there for his satchel and had found that defendant had previously secured possession of it. He remonstrated with the station agent for having delivered the satchel to defendant and thereupon defendant turned upon him with vile language, striking him in the face with clenched fists and striking his eye several times so that it became bruised and swollen; that defendant thereupon stated to several persons standing about: "That man left me to go with a German woman. I will have him driven out of town by the people of Novato"; that defendant followed plaintiff as he left said station and picked up a stone and threatened to strike plaintiff with it and in order to avoid being struck plaintiff was obliged to seek shelter in the depot; that defendant has stated to divers persons that she is going to put plaintiff out of business; that she not only personally annoyed, harassed and assaulted the plaintiff, but caused her mother and sister to assist her in annoying, harassing and assaulting him. Plaintiff then specifies an instance in which defendant's mother and sister

called at his office and assaulted him, breaking his eyeglasses and accusing him of being intimate with a "Hun" woman; that plaintiff has endured great mental suffering and physical pain as a result of such conduct on the defendant's part and has been incapacitated thereby from attending to his business duties.

Let us concede at the outset that the last incident, although admitted in its essential features by the mother and sister, was not proven to have been instigated by the defendant. The mother and sister testified that the defendant did not know of their contemplated visit to plaintiff's office and plaintiff produced no proof to contradict this. Therefore, we shall dismiss this incident from our consideration and direct our inquiry to whether or not the remainder of the evidence warrants the granting of the interlocutory decree of divorce. However, before passing to a consideration of the remainder of the evidence, it might be well to point out, in response to appellant's contention that the admission of the evidence of the assault by the mother and sister of the defendant was prejudicial to the defendant, that the record discloses that the facts were testified to in the first instance by the mother of defendant without objection on the part of the defendant.

Plaintiff testified to repeated quarrels and accusations by the defendant, and particularly to the accusation that plaintiff was having improper relations with his stenographer, whom defendant characterized as the "German woman" or the "Hun." There is no direct corroboration of all of plaintiff's testimony on these matters, but there is corroboration of a considerable part of the same in the testimony of plaintiff's mother to the effect that the defendant came to her house and stated that plaintiff had been there with "that German woman." Plaintiff testified also that he heard this conversation as he was about to enter his mother's house. Another witness, Mrs. Clark, testified that defendant had told her that plaintiff had had improper relations with his stenographer. The stenographer and the plaintiff both took the stand and denied any improper relations whatsoever, and the court has found that defendant's accusations with reference to this matter were untrue. But plaintiff and his said stenographer also testified to an incident in which defendant had assaulted the stenographer in

his office. All of these matters corroborate plaintiff's testimony of repeated quarrels between the parties and of accusations made by the defendant, as does also the testimony of the witness Beck, who worked in the office of plaintiff. He told of a visit of defendant to plaintiff's office at a time when plaintiff was away. She insisted upon getting into the safe and Mr. Beck prevented her from doing so. At that time "she spoke about the 'Hun' woman, as she called her; she said: 'He is with this Hun woman.' "

Plaintiff also testified that defendant would come to his office and read the letters on his desk and would take papers and copies of letters away from his desk and would go into his files against his protest. Mrs. Brown, the mother of plaintiff, testified that defendant had brought to her home a letter which she stated was taken from the plaintiff's file. She read this letter to the witness and stated she was going to put it back again.

The witness Alpi testified that defendant had stated to him that her husband's business dealings were so "crooked" that they seldom "put a deal through" without a lawsuit, She said his business was "crooked."

Plaintiff testified to the assault by the defendant at Novato, California. He was corroborated by the testimony of the witness Stone, who was working at the freight depot when the scene took place. He stated that the plaintiff had asked for his suitcase and had protested when told that it had been given to his wife; that defendant followed close behind him, saying, "You left me for a German woman." She called plaintiff "a dirty dog" in a loud voice and struck him in the face with her hand; that as plaintiff walked away, defendant followed him and stopped as though to pick up something. The station agent, Seaton, also witnessed this assault and testified to substantially the same facts with relation to it, as did also the witness Peterson, the assistant station agent.

The witness Bond, a newspaper publisher at Novato, testified to a conversation between defendant and himself in which defendant admitted striking plaintiff and stated that plaintiff wanted a divorce, but that she would not let him have it and she was going "to make it warm for him" and wanted to run him out of town. Another witness testified that defendant told him she had "beaten Mr. Anderson up"

at the depot. Plaintiff's mother testified that on the evening after the assault she saw plaintiff and his eye was swollen and blackened. Another witness also saw him at the same time and testified to his injuries. Defendant herself admitted the assault, seeking to justify it by stating that the plaintiff had used offensive language to her, but the trial court has found the facts to be in accordance with the plaintiff's testimony. In the light of all the testimony in the record upon this incident, we feel the finding of the court was a proper one.

A great part of the appellant's briefs is devoted to arguments upon the evidence, but after the foregoing statement of the testimony, which supports the findings of the court, it will appear that we are bound by the findings of the trial court and that an argument upon the weight of the evidence is improperly addressed to this court.

[2] Appellant complains that the evidence does not show that plaintiff lost any business by reason of the acts of de fendant. We do not think that such a showing was neces sary. Plaintiff testified that during the time he was subjected to these annoyances he lost thirty pounds in weight and was in the worst physical and financial condition he had ever been in his life. It does not take much proof to carry the conviction that such a course of conduct as that herein narrated would cause mental and physical suffering to the victim regardless of the acuteness of his sensibilities.

We are of the opinion that the evidence sustains the findings, which are sufficient upon which to base the judgment. Appellant makes the most of minor matters with reference to rulings of the trial court upon evidence, but we can find no error in the record which would warrant a reversal of the judgment.

The judgment is affirmed.

Sturtevant, J., and Nourse, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 22, 1923.

All the Justices concurred.